UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UEC Holdings, Inc. | Case No. 3:25-cv-00731-DJH |
| Plaintiff, | Hon. David J. Hale |
| v | |
| Steven Mark Hatcher, Kent Power, Inc., and Troy Kent, | |
| Defendants. | |

# Defendants' Pre-Hearing Brief in Opposition to Plaintiff's Motion for Preliminary Injunction

## Table of Contents

|  | Page(s) |
|---|---|

Introduction ................................................................................................................... 1

Statement of Facts ......................................................................................................... 2

Standard of Review ....................................................................................................... 4

Argument ....................................................................................................................... 5

I.    The requested injunctive relief should be denied. ............................................. 5

    A.    Plaintiffs cannot show irreparable harm .................................................. 5

    B.    Plaintiff is unlikely to succeed on the merits ........................................... 6

        1.    UEC Holdings, Inc. lacks standing ............................................... 6

        2.    Plaintiff is unlikely to succeed on their trade secret claims (Counts I and II) ................................................................. 8

        3.    Plaintiff is unlikely to succeed on its common law claims (Counts III-VI) ................................................................. 10

        4.    Plaintiff is unlikely to succeed on its breach of contract claim against Mr. Hatcher (Count VII) ......................... 11

        5.    Plaintiff is unlikely to succeed on its duty of loyalty claim (Count VIII) ....................................................................... 13

    C.    Defendants and the public are harmed ................................................... 13

    D.    The scope of the proposed preliminary injunction is overbroad ................................................................................................ 14

II.    Statement of Witnesses and Exhibits ............................................................. 16

Conclusion .................................................................................................................. 16

## Introduction

Plaintiff's request for injunctive relief should be denied for several reasons. Instead of preserving the status quo, it changes the status quo in Plaintiff's favor. It requires Defendants to withdraw bids, cease work, and open its electronically stored information to an inspector chosen by Plaintiff, without any protocol or protective order to protect Defendants' privileged, proprietary, or confidential information. It requires Defendants to withdraw bids and cease performing work even on projects where Plaintiff was not invited to bid.

Kent Power has an existing contract to perform transmission services for Louisville Gas & Electric ("LG&E"). LG&E has requested Kent Power to begin those transmission services in December. Plaintiff is not qualified to perform these services, and it was not invited to submit a bid. Kent Power should be allowed to perform this work.

In addition to impermissibly changing the status quo, the requested injunctive relief should be denied because Plaintiff is unlikely to succeed on the merits. The only plaintiff in this case, UEC Holdings, Inc. ("UEC Holdings") lacks standing. It is a holding company; it merely owns other companies. It lacks any customers, trade secrets, or customer-facing employees. While its subsidiary, United Electric Company ("United Electric") may have employees, customers, and trade secrets, UEC Holdings may not bring claims on behalf of its subsidiary.

Even if United Electric were a named plaintiff, the asserted claims are likely to fail on the merits. United Electric is not qualified to perform transmission services

(for LG&E or any other customer). Moreover, Plaintiff fails to identify any trade secrets with specificity, and its common law claims are preempted. The breach of contract and duty of loyalty claims will fail because Mr. Hatcher never worked for UEC Holdings, the counter-party to the contract and only plaintiff in this case, nor has he ever competed against UEC Holdings. And Mr. Hatcher was terminated without cause, which, under the terms of his contract, voids his restrictive covenants.

Plaintiff fails to show any harm, much less irreparable harm, and the balance of equities counsels against injunctive relief. The simple fact of the matter is that Kent Power, Troy Kent, and Mark Hatcher have not taken any work from Plaintiff or from its non-party subsidiary, United Electric. Nor do they intend to do so. The only other project that is currently out for bids is a project on which Plaintiff was not invited to bid. Thus, if Kent Power bids and is awarded that project, there can be no harm to Plaintiff or to United Electric.

**Statement of Facts**

At the evidentiary hearing, Defendants expect the evidence to show that Kent Power is a third generation, full-service utility contracting firm, providing labor, equipment, and project management services to the power and natural gas industry. Troy Kent is the President of Kent Power, which has over 600 employees. One of those employees, Defendant Steven Mark Hatcher, never worked for Plaintiff, UEC Holdings, Inc. (Hatcher Decl. ¶ 2, RE 15-2). This is because UEC Holdings is a holding company.[1] *Id.* at ¶ 5. It does not operate any business. Rather, it owns other

---

[1] https://www.linkedin.com/company/uec-holdings-inc/about/

businesses. It owns several businesses in the Louisville area, including United Electric Company,[2] Safe Zone Services,[3] Best Mechanical,[4] and River City Sheet Metal.[5] *Id.* As a holding company, UEC Holdings has no customers, customer-facing employees, or trade secrets. *Id.* at ¶ 6.

Mr. Hatcher did work for United Electric Company, a subsidiary of UEC Holdings. *Id.* at ¶ 3. Mr. Hatcher worked for United Electric for over 27 years. In 2019, he was promoted to Vice President of the Utility Division of United Electric. *Id.* at ¶ 12. In this role, he worked closely with United Electric's major customer, Louisville Gas & Electric Company ("LG&E").

On January 10, 2019, Mr. Hatcher signed an Employment Agreement (Agreement, RE 1-1, PageId.19) and a Stock Appreciation Right Agreement (Agreement, RE 1-1, PageID.28) with UEC Holdings. Both agreements contain restrictive covenants, and they restrict Mr. Hatcher from competing with UEC Holdings or soliciting UEC Holdings' customers or employees. Mr. Hatcher never signed any restrictive covenant with his actual employer, United Electric.

In the summer of 2024, UEC Holdings paid out the benefits under the Stock Appreciation Rights agreement. At a meeting explaining this payout, the CFO of UEC Holdings, Mitch Ashbrook, expressly waived the non-competition restrictions

---

[2] https://unitedelec.com/
[3] https://safezoneservices.com/
[4] https://best-mechanical.com/
[5] https://www.facebook.com/p/River-City-Sheet-Metal-61574955480605/

3

on the recipients, stating that the recipients were now free to compete. (Declaration, RE 15-2 at ¶ 13).

In July 2025, Mr. Hatcher was demoted from the role of Vice President to the role of project manager. *Id.* at ¶ 12. Mr. Hatcher was told that the demotion was due to the financial condition of the company. *Id.* A week later, he was reinstated as Vice President, but at a lower salary. *Id.*

On August 15, 2025, Mr. Hatcher was terminated. *Id.* at ¶ 14. He was told that he was terminated for a "safety violation," but he was never told what the alleged safety violation was. Nor was he ever presented with any evidence of a safety violation. *Id.* While the president of United Electric said that he had photos of the alleged safety violation, he refused to show them to Mr. Hatcher.

On October 15, 2025, Plaintiff sent cease-and-desist letters to Defendants. (Letters, RE 5-2, PageID.142-164). Kent Power responded nine days later, denying any wrongdoing. (Letters, RE 5-2, PageID.166).

On the afternoon of Friday, November 14, 2025, Plaintiff filed this action and sought an *ex parte* TRO. This Court granted the TRO, *ex parte*, on Monday, November 17, 2025.

## Standard of Review

To grant either form of injunctive relief, a court must consider: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent a stay; (3) whether granting the stay would cause substantial harm to others; and (4) whether the public interest would be served by granting the stay." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

4

No one factor controls; instead, courts balance all four factors. *In re De Lorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985). In seeking continued injunctive relief, the movant has the burden of showing a right to the relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 441, 94 S. Ct. 1113 (1974).

## Argument

### I. The requested injunctive relief should be denied.

#### A. Plaintiffs cannot show irreparable harm

To obtain injunctive relief, a plaintiff must show that it is likely to suffer irreparable harm in the absence of an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). An injury is irreparable if it is not compensable by monetary damages. *Certified Restoration Dry Cleaning Network, LLC v. Tenks Corp.*, 511 F.3d 535, 550 (6th Cir. 2007).

Plaintiff cannot identify a single customer or project that it has lost or is at risk of losing based upon any of the conduct that it alleges. The reason for this is simple—it does not have the capability to perform transmission services for LG&E or any other customer, and it has not been invited to bid on such projects. To Defendants' knowledge, neither Plaintiff nor its subsidiary, United Electric, has been invited to bid on any current projects on which Kent Power has been invited to bid. As a result, Plaintiff cannot show any harm, much less irreparable harm.

Defendants would stipulate to an injunction prohibiting use of UEC Holding's (and United Electric's, even though it is not a party) "confidential, proprietary, or trade secret information or documents" (*See* Order, ¶ 2(c), PageID.184). That is all

5

that is needed to protect Plaintiff or its subsidiary from irreparable harm. Any injunction beyond this is unwarranted. If Plaintiff were able to show that it lost any business as a result of Defendants' actions (which it cannot for the reasons already stated), such an injury can be compensated through money damages. As a result, Plaintiff cannot show irreparable injury, and injunctive relief is not warranted.

### B.   Plaintiff is unlikely to succeed on the merits

A failure to show a likelihood of success on the merits is typically fatal to any request for injunctive relief. *Stryker Employment Co. v. Abbas*, 60 F.4th 372, 385 (6th Cir. 2023). Here, Plaintiff is unlikely to succeed on the merits of any claim, for several reasons.

#### 1.   UEC Holdings, Inc. lacks standing

##### a.   *As a holding company, UEC Holdings lacks customers, employees, and trade secrets*

The plaintiff in this case is UEC Holdings, Inc. As a holding company, it lacks any customers, employees, or trade secrets of its own. (Declaration, RE 15-2). Rather, the business of UEC Holdings is to own its subsidiaries. It "invest[s] in acquisitions, startups, and innovative ventures.[6] Its subsidiaries include United Electric Company, Inc., as well as other companies. (*Id.* at ¶ 5). UEC Holdings has no operations of its own. (*Id.*).

Because UEC Holdings is a holding company, all the stated claims in the complaint are doomed to fail. Defendants could not have misappropriated Plaintiff's

---

[6] https://www.linkedin.com/company/uec-holdings-inc/about/

trade secrets (Counts I and II), because UEC Holdings doesn't have any. Defendants could not have tortiously interfered with Plaintiff's contracts or business expectancies (Counts III and IV), because UEC Holdings' contracts and business expectancies are limited to the holding of assets—something that Defendants could not have interfered with. For the same reasons, the unfair competition and unjust enrichment claims cannot survive—Defendants do not compete against a holding company and no defendant ever received any benefit from UEC Holdings. And the breach of contract and duty of loyalty claims fail, among other reasons, because Hatcher is only restricted from competing with UEC Holdings, and Mr. Hatcher owes no duty of loyalty to UEC Holdings.

> b. *UEC Holdings cannot bring claims on behalf of its subsidiary*

"As a general rule, two separate corporations are regarded as distinct legal entities even if the stock of one is owned wholly or partly by the other." *American BioCare Inc. v. Howard & Howard Attorneys PLLC*, 702 Fed. App'x 416, 420 (6th Cir. 2017). Further, "the properties of two corporations are distinct, though the same shareholders own or control both. A holding corporation does not own the subsidiary's property." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S. Ct. 1644 (2003). Applying these rules in *American BioCare*, the Sixth Circuit held that the plaintiff "cannot enforce the rights of the [plaintiff's] entities merely by owning the entities." *American BioCare Inc.*, 702 Fed. App'x. at 421. This means that "injury arising solely out of harm to a subsidiary corporation is generally insufficient to confer standing on

7

a parent corporation." *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 770 (6th Cir. 2012).

In addition to Article III standing, Fed. R. Civ. P. 17 requires that "an action must be prosecuted in the name of the real party in interest." The Sixth Circuit has clarified this rule, stating, "the real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law. The real party in interest analysis turns on whether the substantive law creating the right being sued upon affords the party bringing suit a substantive right to relief." *Certain Interested Underwriters at Lloyd's, London, Eng. v. Layne*, 26 F.3d 42-43 (6th Cir. 1994).

Here, Plaintiff lacks both Article III and real-party-in-interest standing. United Electric Company, Inc., not UEC Holdings, is the entity that employed Mr. Hatcher, and it is the entity that services customers, including LG&E. (Ex. A). UEC Holdings may not bring claims on behalf of its subsidiary. Because the Plaintiff lacks standing, this Court lacks subject matter jurisdiction over this case, and Plaintiff cannot succeed on the merits.

        2.    <u>Plaintiff is unlikely to succeed on their trade secret claims (Counts I and II)</u>

Even if UEC Holdings had standing, it has failed to show that it is likely to succeed on the merits of its trade secret claims.

A plaintiff must identify its alleged trade secrets with specificity. *ArtiCure, Inc. v. Jian Meng*, 842 F. App'x 974, 980 (6th Cir. 2021); *N. Harris Computer Corp. v. DSI Investments, LLC*, 608 F. Supp. 3d 511, 524 (W.D. Ky. 2022). "[A] 'conclusory statement that documents contain proprietary trade secrets' is not sufficient for

8

Kentucky courts." *KCH Services, Inc. v. Vanaire, Inc.*, 2009 WL 10681445, at *7 (W.D. Ky. Dec. 3, 2009) (quoting *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 817 (Ky. 2004)).

Under the federal Defend Trade Secrets Act, a trade secret is information that "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). The owner of a trade secret must take "reasonable measures to keep such information secret." Id. The definition of "trade secret" under Kentucky's statute is similar. KRS 365.880(4).

Here, Plaintiff fails to identify its trade secrets with specificity, and it fails to show that its alleged trade secrets satisfy the statutory definition. Instead, Plaintiff vaguely refers to "pricing models, bid templates, and customer data" as trade secrets (Brief, RE 5-1, PageID.79), without identifying any specific models, templates, or data. While pricing models, bid templates, and customer data can be trade secrets, whether they actually are is a "fact-specific inquiry." *B&P Littleford, LLC v. Prescott Machinery, LLC,* 2021 WL 3732313, at *6 (6th Cir. Aug. 24, 2021) ("Whether a particular type of information constitutes a trade secret is a question of fact."); *Smart & Assocs., LLC v. Indep. Liquor (NZ) Ltd.,* 226 F. Supp. 3d 828, 856 (W.D. Ky. 2016). Plaintiff offers no evidence to meet its burden of showing that its pricing, bid, or customer data actually is a trade secret.

And Plaintiff asserts that UEC Holdings "has taken reasonable measure to maintain the confidentiality of this information" (*Id.*), but it provides no evidence to support this assertion. The Certification of Scott Walsh, which Plaintiff relied on in support of its TRO motion, fails to offer any testimony supporting the notion that any particular "pricing models, bid templates, and customer data" qualify as a trade secret.

As a result, Plaintiff has failed to show a likelihood of success on the merits of its trade secrets claims.

### 3. Plaintiff is unlikely to succeed on its common law claims (Counts III-VI)

Kentucky's Trade Secrets Act, KRS 365.800 et seq., "replaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." KRS 365.892. That is, "KUTSA replaces other law relating to the misappropriation of trade secrets, regardless of whether the Plaintiffs demonstrate that the information at issue qualifies as a trade secret." *Auto Channel, Inc. v. Speedvision Network, LLC,* 144 F. Supp. 784, 788 (W.D. Ky. 2001). "KUTSA preemption is not concerned with whether a party specifically uses the phrase "trade secret," but rather with establishing a uniform business environment that create[s] more certain standards for the protection of commercially valuable information." *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, 2019 WL 13160804, at *1 (W.D. Ky. Feb. 11, 2019) (quoting *Auto Channel, Inc.*, 144 F. Supp. at 789).

10

Plaintiff's tortious interference, unfair competition, and unjust enrichment claims all appear to be based on the same facts as the trade secret claims. *See e.g.* Complaint, ¶ 76 ("Defendants have engaged in and continue to engage in unfair competition against Plaintiff by using Plaintiff's confidential information and usurping its client relationship.") and Brief, pg. 14, 16 (referring to the alleged misappropriation of proprietary information in support of its tortious interference claims). The common law counts fail to identify any factual basis for those claims independent of the alleged trade secret misappropriation. As a result, Plaintiff has failed to show a likelihood of success on the merits of those claims.

    4.    <u>Plaintiff is unlikely to succeed on its breach of contract claim against Mr. Hatcher (Count VII)</u>

        a.    *Mr. Hatcher's employer was United Electric, not UEC Holdings*

While Mr. Hatcher had non-competition and non-solicitation agreements with UEC Holdings, Mr. Hatcher was never an employee of UEC Holdings. Instead, throughout his career, Mr. Hatcher worked for United Electric Company, UEC Holding's subsidiary. (Ex. A at ¶ 3).

The Employment Agreement defines "Employer" as "UEC Holdings, Inc., a Kentucky corporation." (Agreement, RE 1-1, PageID.19). It does not define "Employer" as "UEC Holdings, Inc. and its Affiliates or Subsidiaries." By its plain terms, therefore, the Employment Agreement restricts Mr. Hatcher vis-à-vis one, and only one, entity—UEC Holdings. Nothing in the Employment Agreement prohibits Mr. Hatcher from competing against United Electric or soliciting United Electric's customers or employers.

11

The Stock Appreciation Rights Agreement is similar. It defines "Corporation" as "UEC Holdings, Inc., a Kentucky corporation." (Agreement, RE 1-1, PageID.28). It does not define "Employer" as "UEC Holdings, Inc. and its Affiliates or Subsidiaries." The Stock Appreciation Agreement confusingly states that Mr. Hatcher may not compete against the "Company"—an undefined term—or solicit the "Company's" employees. Nothing in the Stock Appreciation Agreement restricts Mr. Hatcher's activities against United Electric Company in any way. To the extent that either agreement is poorly drafted, the consequences fall on Plaintiff, not Mr. Hatcher.

Plaintiff fails to show that Mr. Hatcher competed against UEC Holdings or solicited UEC Holdings' customers or employees. Nor could it, as UEC Holdings is merely a holding company. Plaintiff has failed to show a likelihood of success on its breach of contract claim.

      b. *Mr. Hatcher was terminated without cause, voiding his restrictive covenants*

The Employment Agreement states that the non-competition provision "shall not apply if the Employee is terminated by the Employer without cause pursuant to Paragraph 3.3." (Agreement, ¶ 6, RE 1-1, PageID.23). When United Electric terminated Mr. Hatcher on August 15, 2025, it alleged that the reason was for "safety violations." Mr. Hatcher asked for information about the alleged safety violations, but he was provided none. (Declaration, RE 15-2 at ¶ 15). He has never been told what the alleged safety violation is, nor has he been shown any evidence of an alleged safety violation.

12

Plaintiff fails to address this provision, and it fails to present any evidence showing that Mr. Hatcher was terminated for cause. As a result, Plaintiff has failed to show that it is likely to succeed on the merits of its contract claim.

### c. *Plaintiff waived the non-competition provision*

In the summer of 2024, UEC Holdings paid out the value of the Stock Appreciation Awards for both Mr. Hatcher and other employees who had the awards. At a meeting discussing this payment, the CFO of UEC Holdings, Mitch Ashbrook, informed the recipients that they were "free" from their restrictive covenants. (Ex. A at 13). As a result, UEC Holdings waived the restrictive covenants in that agreement.

### 5. Plaintiff is unlikely to succeed on its duty of loyalty claim (Count VIII)

While corporate officers and directors may owe a fiduciary duty of loyalty to their employer, they do not owe such a duty to the parent of their employer. See *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 918, 939 (W.D. Ky. 2007) (holding that employees of a company owe no fiduciary duty to a related company). Mr. Hatcher never worked for UEC Holdings, and he owes no duty of loyalty to UEC Holdings. Further, to the extent that the duty of loyalty claim is premised on the alleged misappropriation of trade secrets, the claim is preempted. KRS 365.892.

### C. Defendants and the public are harmed

In deciding whether to grant injunctive relief, a district court must consider the harm that the injunction would cause the non-movant and others. *Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 33 (6th Cir. 2011). Here, while the TRO, on its face, applies only to UEC Holdings' customers, employees, and trade secrets—of which

13

there are none—Plaintiff will likely attempt to use the TRO to disrupt Kent Power's business relationship with LG&E. As a result, the TRO harms not only Defendants, but LG&E as well. LG&E is relying on Kent Power to provide transmission services under an existing contract beginning in December.

### D. The scope of the proposed preliminary injunction is overbroad

The proposed preliminary injunction does more than preserve the status quo. Instead of merely requiring Defendants to preserve evidence or refrain from soliciting new business or new employees, the order here requires Defendants to take affirmative action. For example, the order requires Defendants to "withdraw any proposals submitted to, and cease performing any work for any UEC customer or prospective customer with whom Hatcher had dealings during his employment and to withdraw any proposals/bids submitted to entities to which UEC has submitted bids or performed work in the relevant period." (TRO ¶ (2)(g), RE 9, PageID.184). This doesn't preserve the status quo; it changes the status quo in Plaintiff's favor— and before there has been any adjudication on the merits.

Likewise, the TRO here requires Defendants "to provide to UEC, within 5 days, a written certification of completion from a qualified independent computer forensics vendor selected by UEC confirming that all UEC confidential information has been permanently removed from all devices, accounts and storage media in Defendants' custody, possession, or control." (TRO ¶ (2)(f), RE 9, PageID.184) Setting aside that it is impractical to believe that Defendants could comply with this requirement (Defendants cannot certify destruction of materials when no expert has even been approved by the Court), this paragraph doesn't merely preserve evidence for a later

14

evidentiary hearing; it requires destruction of information. The order requires Defendants to provide access to its electronic devices—all without an evidentiary hearing, a forensic protocol, or even a protective order to prevent disclosure of information subject to the attorney-client privilege or to protect Defendants' confidential, proprietary, and personal information.

Additionally, the TRO purports to prevent Hatcher, for two years, from working for a competitor within 100 miles of any UEC office, and it prohibits Defendants, for two years, from soliciting, diverting, or accepting business from any UEC established or prospective customers. (TRO ¶ (2)(f), RE 9, PageID.184). It imposes this restriction even though Mr. Hatcher does not have any restrictive covenant that prevents him from competing against his prior employer, as explained below. This restriction doesn't preserve the status quo; it changes the status quo—all without any opportunity for Defendants to be heard.

Of the seven restrictions in the TRO, only two of them—paragraphs 2(c) and 2(d), arguably preserve the status quo. As set forth in paragraph 2(c), Defendants agree not to "use, access, transmit, or disseminate any UEC confidential, proprietary, or trade secret information or documents" during the pendency of this case. Likewise, Defendants agree to preserve relevant evidence, as set forth in the first sentence of paragraph 2(d). Defendants have no objection to an injunction containing these restrictions. They would stipulate to such restrictions. They would even stipulate to such restrictions as to United Electric, even though it is not a party to this lawsuit.

15

But the remaining paragraphs are overbroad. They do not preserve the status quo; they impermissibly tip the scales in favor of the Plaintiff. They should be dissolved.

## II. Statement of Witnesses and Exhibits

The Court's November 25, 2025 order (RE 24) requires "joint proposed statement that includes names of witnesses, exhibit list, and an estimated length of time for the hearing." The joint statement is being filed by Plaintiff. Defendants reserve the right to call Mitch Ashbrook, Mark Hatcher, and Troy Kent at the hearing. In addition to the exhibits identified by Plaintiff, Defendants reserve the right to introduce Mark Hatcher's paystub and W-2 as exhibits. Defendants anticipate that the hearing will last ½ of a day.

## Conclusion

The motion for preliminary injunction should be denied, and the *ex parte* TRO should be dissolved. Alternatively, any injunctive relief should be limited to preserving the status quo.

Dated: November 25, 2025        By   */s/ Kent Wicker*
                                              Kent Wicker
                                              Kayla M. Campbell
                                              Wicker / Brammell PLLC
                                              323 West Main Street, 11th Floor
                                              Louisville, Kentucky 40202
                                              Phone: (502) 780-6185
                                              Kent@wickerbrammell.com
                                              Kayla@wickerbrammell.com

                                              and

                                              D. Andrew Portinga (P55804)

16

>James R. Peterson (P43102)
>Amanda L. Rauh-Bieri (P83615)
>MILLER JOHNSON
>*(admitted pro hac vice)*
>45 Ottawa Avenue SW, Suite 1100
>PO Box 306
>Grand Rapids, Michigan 49501-0306
>Telephone: (616) 831-1700
>portingaa@millerjohnson.com
>petersonj@millerjohnson.com
>rauhbieria@millerjohnson.com
>
>Counsel for Defendants

## Certificate of Service

The undersigned counsel certifies that, on November 25, 2025, the foregoing *Defendants' Pre-Hearing Brief in Opposition to Plaintiff's Motion for Preliminary Injunction* was served upon the attorney(s) of record pursuant to this Court's electronic e-filing system.

Dated: November 25, 2025     By  /s/ Kent Wicker
                                 Kent Wicker
                                 *Counsel for Defendants*