UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

UEC Holdings, Inc. and                                 Case No. 3:25-cv-00731
United Electric Company, Inc.

      Plaintiffs,                                      Hon. David J. Hale

v

Steven Mark Hatcher, Kent Power,
Inc., and Troy Kent,

      Defendants.

---

# <u>Defendants' Answer, Affirmative Defenses, and Counterclaim</u>

      **Defendants, Steven Mark Hatcher, Kent Power, Inc., and Troy Kent, by their attorneys, Miller Johnson, answer Plaintiff's Amended Verified Complaint as follows:**

## <u>INTRODUCTION</u>

      1.    Plaintiffs bring this action to stop a coordinated raid on its business orchestrated by their former Vice President of the Utility Division, Defendant Hatcher, direct competitor, Kent Power, and President of Kent Power, Kent.

**<u>ANSWER:</u>  Admitted that Plaintiffs brought an action against Defendants. Defendants deny all remaining allegations.**

      2.    Working in concert while Hatcher remained employed by Plaintiffs, Defendants knowingly and willfully misappropriated UEC's confidential pricing models, bid strategies, crew-rate spreadsheets, unit pricing, equipment rate build-ups, and customer intelligence; solicited UEC's employees and customers, all in

knowing and willful violation of Hatcher's Employment Agreement (See Employment Agreement attached herein as Exhibit A) and Stock Appreciation Right Agreement (See "SAR Agreement," attached herein as Exhibit B) (collectively, the "Agreements"), and with Kent Power and Troy Kent's active participation and inducement.

**ANSWER:  This paragraph contains legal conclusions to which no response is required.  Admitted that copies of the Employment Agreement and Stock Appreciation Right Agreement are attached to the complaint. Those Agreements speak for themselves. Defendants deny all remaining allegations.**

3.    The evidence is clear. Throughout July and August 2025, Hatcher privately coordinated with Kent Power's president, Kent, including in-person meetings near UEC's Louisville office, "drive-by" visits to UEC job sites, and ongoing exchanges of insider rate and pricing information transmitted by texts across state lines.

**ANSWER:  Admitted only that Kent met with Hatcher in the summer of 2025.  Denied that there was anything wrongful about these meetings.  All remaining allegations are denied.**

4.    Hatcher supplied Kent Power and Kent with UEC's sensitive rate architecture, blended crew rates, burden assumptions, equipment billing rates, unit pricing sheets, and time-and-equipment ("T&E") spreadsheets, which Kent Power and Kent used to calibrate its bids to UEC's key utility customer ("The Client")1 and to strategize launch of Kent Power's competing service.

**ANSWER:  Denied.**

5.    Defendants choreographed Kent Power's pursuit of UEC's customer decision-makers, setting presentations, circulating "references," aligning "blue-sky" rates, and scheduling travel to Louisville, all while Hatcher remained on UEC's payroll.

**ANSWER:  Denied.**

6.    These actions breach Hatcher's restrictive covenants and confidentiality obligations, which bar him for two years from engaging in competitive activities within 100 miles of any UEC office, from soliciting UEC's customers and employees, and from disclosing or using UEC's confidential and trade-secret information.

**ANSWER:  Denied.**

7.    Kent Power and Kent knowingly induced and joined Hatcher's violations, receiving and exploiting UEC's trade secrets to compete in UEC's core market.

**ANSWER:  Denied.**

8.    UEC faces immediate and irreparable harm. Defendants' unlawful conduct targets UEC's customer relationships, pricing advantages, and workforce, the very assets that Kentucky law and the Agreements protect, creating a present risk of lost customers and projects, destabilized crews, and permanent erosion of goodwill that monetary damages cannot repair.

**ANSWER:  Denied.**

9. On October 15, 2025, UEC, through counsel, issued a written cease-and-desist letter to Defendants demanding that they cease using UEC's confidential information and honor Hatcher's contractual restrictions.

**ANSWER:  Admitted.**

10. On October 24, 2025, Kent Power (through counsel) denied any wrongdoing; Hatcher did not respond.

**ANSWER:  Admitted.**

11. Defendants' failure to provide assurances coupled with the evidence underscores the need for immediate injunctive relief.

**ANSWER:  Denied.**

12. UEC therefore seeks immediate injunctive relief to halt Defendants' ongoing misuse of UEC's confidential information, to enforce Hatcher's restrictive covenants, to stop further solicitation of UEC's customers and employees, and to prevent Defendants from launching or continuing competing operations in the protected territory, together with all appropriate damages and other relief.

**ANSWER:  Admitted that UEC seeks relief. Denied that UEC is entitled to relief.**

## PARTIES

13.    UEC Holdings, Inc. is a duly organized corporation existing under the laws of the Commonwealth of Kentucky with a principal place of business located at 9901 Linn Station Road, Suite 850, Louisville, Kentucky 40223.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph.**

14.    United Electric Company, Inc. is a wholly owned subsidiary of UEC Holdings, Inc., that has been in business for over 60 years. It is located in Louisville, Kentucky, employing approximately 250 people and providing commercial and industrial electrical construction, petroleum and chemical facility systems, and electrical power distribution and utility services.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph.**

15.    Kent Power is a Michigan-based utility contractor that builds, maintains, and restores electrical and energy infrastructure, including transmission lines, substations, and distribution systems for major utilities and municipalities.

**ANSWER:    Admitted.**

16.    Upon information and belief, Hatcher is an adult individual residing in Jefferson County, Kentucky.

**ANSWER:    Admitted.**

17.    Upon information and belief, Kent is an adult individual residing in Michigan.

5

**ANSWER:  Admitted.**

## JURISDICTION AND VENUE

18.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the action includes claims arising under federal law, including the Defend Trade Secrets Act, 18 U.S.C. § 1836.

**ANSWER:  No contest.**

19.    This Court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal questions presented.

**ANSWER:  No contest.**

20.    This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) because UEC is a Kentucky corporation and Kent Power is a Michigan-based company, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:  Denied. Defendants admit that the amount in controversy exceeds $75,000.**

21.    Personal jurisdiction over Defendants is proper because they purposefully directed tortious and unlawful conduct toward entities and customers located in Kentucky, including in Louisville, and the claims arise out of or relate to those contacts.

**ANSWER:   This paragraph contains legal conclusions to which no response is required.  Defendants deny all remaining allegations.**

22.     Venue is proper in the United States District Court for the Western District of Kentucky under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the improper disclosure and use of confidential and trade secret information directed at competitors and customers within Louisville, Kentucky, and the resulting injury was felt here.

**ANSWER:   Defendants do not contest venue.  The remaining allegations are denied.**

23.     Venue is further proper in this District because Plaintiffs maintain operations and facilities in Louisville, Kentucky, within the Western District of Kentucky.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph.**

## FACTUAL BACKGROUND

### A.     Background on Plaintiffs and Hatcher's Role and Access

24.     UEC Holdings, Inc. is the parent and sole owner of United Electric Company, Inc., a Kentucky Union contractor that provides commercial and industrial electrical construction and utility services in and around Louisville. United Electric has operated for more than 60 years and employs approximately 250 people.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph.**

25.    Hatcher joined United Electric in 1998 and, in 2019, became Vice President of the Utility Division, overseeing operations, budgets, staffing, safety compliance, and fleet equipment.

**ANSWER:  Admitted.**

26.    In that senior role, Hatcher had broad access to Plaintiffs' most sensitive information, including confidential pricing architecture, bid templates, rate sheets, labor and equipment burdens, customer strategies, and performance data.

**ANSWER:    Denied that information to which Hatcher had access qualifies as a trade secret.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining matters asserted in this paragraph.**

27.    On January 10, 2019, Hatcher executed the Employment Agreement and SAR Agreement. The Employment Agreement includes a two-year, 100-mile non-compete, two-year non-solicitation (customers and employees), and a broad confidentiality covenant. The SAR Agreement mirrors those restrictions and provides forfeiture of SAR benefits upon breach. See Exs. A and B.

**ANSWER:    Admitted that Hatcher executed an Employment Agreement and SAR Agreement. The terms of the Agreements speak for themselves. Defendants deny any allegation to the contrary.**

28.    In August 2025, UEC terminated Hatcher for "just cause" for poor financial performance, documentation failures, dishonesty, customer dissatisfaction,

and safety violations, including at least one incident with potentially severe consequences.

**ANSWER:  Admitted that Hatcher was terminated. Denied that Hatcher was terminated for "just cause."**

B.    **Early Reports, Cease and Desist Letters, and Device Review**

29.    Before the full scope of misconduct was known, a current employee reported Hatcher's communications with Kent Power and Kent regarding efforts to target The Client and indicated Hatcher appeared to be working with Kent Power.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph.**

30.    On October 9, 2025, UEC forensically reviewed Hatcher's company-issued devices and communications and discovered: (i) regular July 2025–August 2025 communications between Hatcher and Troy Kent; (ii) transmissions of UEC's confidential pricing and rate materials; and (iii) deleted text messages suggesting efforts to conceal the communications.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph.**

31.    On October 15, 2025, UEC, through counsel, sent a written cease-and-desist letter to Hatcher and Kent Power demanding that they cease using UEC's confidential information and honor Hatcher's covenants. Defendants did not provide substantive assurance or cessation.

**ANSWER:  Admitted.**

C.    **Coordination with Kent Power and Kent While Hatcher Was Still Employed**

32.    From at least July 16, 2025 into August 2025, Hatcher coordinated in-person meetings with Kent near UEC's Louisville office and discussed "drive-bys" of UEC job sites.

**ANSWER:  Admitted only that Hatcher and Kent met in the summer of 2025. Denied that these meeting were improper.  All remaining allegations are denied.**

33.    Hatcher and Kent met privately for lunches and dinners during this period, where Kent introduced Hatcher to members of the Kent Power team. These meetings were not authorized by UEC and occurred while Hatcher was still a UEC executive.

**ANSWER:  Admitted only that Hatcher and Kent met in the summer of 2025. Denied that these meeting were improper.  All remaining allegations are denied.**

34.    On July 29, 2025, Hatcher sought information from a key decision-maker at The Client regarding Kent Power's presentation and other contractors under consideration, disparaged competitors, and encouraged a selection favorable to Kent Power—despite his ongoing role at UEC. When Kent asked for The Client's internal reaction, Hatcher responded, "I'll find out."

**ANSWER:  Denied.**

35.    On July 30, 2025, Hatcher conveyed confidential competitive intelligence about another contractor's presentation and operational weaknesses, including a lack of "blue sky day crews."

**ANSWER:  Denied.  To the extent that Hatcher conveyed any information to Kent, such information was not "confidential competitive intelligence" or a trade secret.**

**D.    Transmission and Use of UEC's Confidential Pricing Architecture**

36.    On or about August 5, 2025, while still a UEC employee, Hatcher transmitted to Kent "the spreadsheet we use for T&E and Storm," revealing UEC's wage rates, burden percentages, blended-rate calculations, and equipment builds, and provided UEC's internal blended rates.

**ANSWER:  Denied.  In further answer, Hatcher was never a UEC employee, and UEC has no wage rates, burden percentages, blended-rate calculations, equipment builds, or internal blended rates.**

37.    These materials are among UEC's most tightly guarded trade secrets and are not shared outside a small, need-to-know management group.

**ANSWER:  Denied.**

38.    Only two individuals below Hatcher had access to these spreadsheets, and the electronic storage of the spreadsheets is on a restricted, invitation-only drive. Disclosure enables a competitor to undercut UEC by shaving bids to just below UEC's pricing while copying UEC's rate logic and cost-recovery model.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph.**

39.    In subsequent exchanges (August 11–14, 2025), Kent sent Hatcher proposed rate spreadsheets ("Here's what we're going to present for rates.") and asked, "Should I add safety to t&e rate?" Hatcher confirmed an incentive structure ("5 overscale plus 10 incentive") and provided closing-price guidance and discount levels drawn from UEC's internal bid methodology. Troy Kent then confirmed: "Rates submitted."

**ANSWER:   Denied.  To the extent that Hatcher conveyed any information to Kent, such information was not "confidential competitive intelligence" or a trade secret.**

40.    Hatcher also disclosed equipment deployment and billing practices, exposing UEC's institutional approach to performance and billing.

**ANSWER:   Denied.  To the extent that Hatcher conveyed any information to Kent, such information was not "confidential competitive intelligence" or a trade secret.**

41.    The exchanges reflect that Kent Power and Kent used UEC's proprietary constructs, burden percentages, blended rates, unit pricing, incentives, and equipment schedules, to calibrate competing proposals for The Client in UEC's core market.

**ANSWER:   Denied.**

**E.    Targeting UEC's Workforce and Planning Around Contract Restrictions**

42.    Hatcher warned that if his general foreman and linemen left, it would impair UEC's capacity.

**ANSWER:   Denied.   To the extent that Hatcher conveyed any information to Kent, such information was not "confidential competitive intelligence" or a trade secret.**

43.    Defendants also strategized around Hatcher's restrictive covenants. In texts, Hatcher recounted Kent Power's counsel's view that "we would just pay back what the SARs non-compete was that they paid me," and Kent asserted, "If they formally demote you your non-compete is null and void. Cleanest outcome there is."

**ANSWER:  Admitted only that Hatcher and Kent discussed Hatcher's restrictive covenants.  Denied that such discussion was improper.  Any remaining allegations are denied.**

44.    Kent Power and Kent treated the breach of Hatcher's restrictive covenants as a cost of doing business, discussing repayment of the "SARs non-compete" and Kent relaying to Hatcher that "if it cost $100,000 to start up a new business then it's worth it."

**ANSWER:  Admitted only that Hatcher and Kent discussed Hatcher's restrictive covenants.  Denied that such discussion was improper.  Any remaining allegations are denied.**

**F.    Ongoing Risk to UEC and The Client Relationship**

45.    United Electric's contract with The Client extends to 2027 but is non-exclusive; The Client may engage additional contractors at any time. Thus, Kent

Power's immediate use of UEC's pricing architecture and bid methodology creates a present risk of reduced crew assignments and diminished work volume even before the current term ends.

**ANSWER: Defendants deny use of UEC's pricing architecture and bid methodology. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining matters asserted in this paragraph.**

46. The misconduct threatens UEC's goodwill and market position in a way money damages cannot repair: once a competitor internalizes UEC's pricing logic, burdens, blended-rate constructs, and billing practices, secrecy is lost and competitive displacement becomes difficult to unwind.

**ANSWER: Denied.**

47. UEC has taken reasonable measures to protect secrecy, including limited access, password protected systems, restricted drives, and contractual confidentiality and restrictive covenants. Hatcher acknowledged and accepted these obligations yet used UEC's information for a competitor's benefit while still employed.

**ANSWER: Denied.**

**COUNT I**
**ALLEGED MISAPPROPRIATION OF TRADE SECRETS**
**(DEFEND TRADE SECRETS ACT ("DTSA"), 18 U.S.C. § 1836)**
**(AS TO ALL DEFENDANTS)**

48. Plaintiffs incorporate by reference all preceding paragraphs.

**ANSWER: Defendants, Steven Mark Hatcher, Kent Power, Inc., and Troy Kent incorporate by reference their answers to each of the preceding paragraphs.**

49.    UEC owns trade secrets including proprietary pricing models, blended rate calculations, burden rates, T&E and storm spreadsheets, unit pricing, rate tables, and customer-specific bid strategies, all of which derive independent economic value from not being generally known and are subject to reasonable measures to maintain secrecy.

**ANSWER:    Denied.**

50.    Hatcher and, through him, Kent Power and Kent misappropriated these trade secrets by improper means, including unauthorized disclosure and use, for Defendants' benefit and to compete directly with UEC.

**ANSWER:    Denied.**

51.    Hatcher violated his Employment Agreement and SAR Agreement by engaging in competitive activities within the restricted area and timeframe.

**ANSWER:    Denied.**

52.    Defendants' conduct constitutes willful and malicious misappropriation under the DTSA.

**ANSWER:    Denied.**

**WHEREFORE, Defendants request that Plaintiff's Amended Verified Complaint be dismissed, that judgment be entered in favor of Defendants and that Defendants be awarded its costs and interest, as well as its attorney's fees pursuant to 18 U.S.C. § 1836(b)(3).**

## COUNT II
## ALLEGED MISAPPROPRIATION OF TRADE SECRETS (KUTSA)
### (AS TO ALL DEFENDANTS)

53.     Plaintiffs incorporate herein by reference the allegations of the preceding paragraphs.

**ANSWER:  Defendants, Steven Mark Hatcher, Kent Power, Inc., and Troy Kent incorporate by reference their answers to each of the preceding paragraphs.**

54.     Plaintiffs possess trade secrets within the meaning of the Kentucky Uniform Trade Secrets Act ("KUTSA"), including, but not limited to, customer information, pricing data, bid proposals, financial forecasts, and proprietary business strategies.

**ANSWER:  Denied.**

55.     Hatcher, by virtue of his employment with Plaintiffs, had access and a duty to maintain the secrecy of these trade secrets.

**ANSWER:  Denied.**

56.     Defendants misappropriated Plaintiffs' trade secrets by wrongfully retaining, disclosing, and using such information for the benefit of Kent Power.

**ANSWER:  Denied.**

57.     Defendants' actions constitute actual and threatened misappropriation of trade secrets in violation of KRS 365.880 et seq.

**ANSWER:  Denied.**

58.    Under Kentucky law, the misappropriation of trade secrets claim is not preempted by the breach of contract claim arising from Hatcher's breaches of the Agreements.

**ANSWER:  Denied.**

59.    As a direct and proximate result, Plaintiffs have suffered and will continue to suffer damages and irreparable harm unless Defendants are enjoined.

**ANSWER:  Denied.**

**WHEREFORE, Defendants request that Plaintiff's Amended Verified Complaint be dismissed, that judgment be entered in favor of Defendants and that Defendants be awarded its costs and interest, as well as its attorney's fees pursuant to 18 U.S.C. § 1836(b)(3).**

## COUNT III
## ALLEGED TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
**(AS TO ALL DEFENDANTS)**

60.    Plaintiffs incorporate herein by reference the allegations of the preceding paragraphs.

**ANSWER:  Defendants, Steven Mark Hatcher, Kent Power, Inc., and Troy Kent incorporate by reference their answers to each of the preceding paragraphs.**

61.    At all relevant times, UEC maintained a valid and enforceable contract with The Client.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph.**

62.    Defendants knew of that contractual relationship.

**ANSWER:    Admitted that Defendants were aware of a business relationship between UEC and The Client. Defendants lack knowledge or information sufficient to form a belief as to the nature of that relationship.**

63.    Kent Power became aware of that relationship through its communications and coordination with Hatcher while he was still employed at UEC.

**ANSWER:    Denied.**

64.    While Hatcher remained bound by his Employment and SAR Agreements, Defendants intentionally and without justification interfered with UEC's contract.

**ANSWER:    Denied.**

65.    Defendants' interference was willful, malicious, and undertaken with full knowledge that UEC was contractually engaged with The Client and that Hatcher's restrictive covenants prohibited such conduct.

**ANSWER:    Denied.**

66.    As a direct and proximate result, UEC has sustained and faces continuing and imminent injury, including disruption of its contractual relationship with The Client, threatened diversion of work, and impairment of customer goodwill and trust.

**ANSWER:    Denied.**

**WHEREFORE, Defendants request that Plaintiff's Amended Verified Complaint be dismissed, that judgment be entered in favor of Defendants**

and that Defendants be awarded its costs and interest, as well as its attorney's fees pursuant to 18 U.S.C. § 1836(b)(3).

**COUNT IV**
**ALLEGED TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE BUSINESS ADVANTAGE**
**(AS TO ALL DEFENDANTS)**

67.     Plaintiffs incorporate herein by reference the allegations of the preceding paragraphs.

**ANSWER:   Defendants, Steven Mark Hatcher, Kent Power, Inc., and Troy Kent incorporate by reference their answers to each of the preceding paragraphs.**

68.     At all relevant times, Plaintiffs enjoyed an economic advantage with its customers.

**ANSWER:   Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph.**

69.     Defendants purposely interfered with the aforesaid economic advantage by diverting corporate opportunities and perpetrating the fraudulent scheme herein.

**ANSWER:   Denied.**

70.     There is no applicable privilege or justification for the actions of Defendants.

**ANSWER:   Denied.**

71.     By tortiously interfering with Plaintiffs' economic advantage, Defendants have caused and continue to cause Plaintiffs actual, immediate and irreparable harm for which Plaintiffs have no adequate remedy at law.

**ANSWER:  Denied.**

72.     By   tortiously   interfering   with   Plaintiffs'   economic   advantage, Defendants   have   acted   intentionally,   willfully   and   with   reckless   indifference   to Plaintiffs' rights.

**ANSWER:  Denied.**

73.     Defendants will continue such wrongful conduct unless enjoined.

**ANSWER:  Denied.**

74.     Defendants'   tortious   interference   has   caused   substantial   damage   to Plaintiffs, including, but not limited to, Plaintiffs' continuing loss of an indeterminate amount of sales revenues, loss of goodwill, and loss of business opportunities.

**ANSWER:  Denied.**

**WHEREFORE, Defendants request that Plaintiff's Amended Verified Complaint be dismissed, that judgment be entered in favor of Defendants and that Defendants be awarded its costs and interest, as well as its attorney's fees pursuant to 18 U.S.C. § 1836(b)(3).**

**COUNT V**
**ALLEGED UNFAIR COMPETITION**
**(AS TO ALL DEFENDANTS)**

75.     Plaintiffs   incorporate   herein   by   reference   the   allegations   of   the preceding paragraphs.

**ANSWER:  Defendants, Steven Mark Hatcher, Kent Power, Inc., and Troy Kent incorporate by reference their answers to each of the preceding paragraphs.**

76.    By the allegations described above, Defendants have engaged in and continue to engage in unfair competition against Plaintiffs by using Plaintiffs' confidential information and usurping its client relationships.

**ANSWER:    Denied.**

77.    Defendants coordinated efforts to target UEC's customers, including The Client, using UEC's confidential information to gain competitive advantage.

**ANSWER:    Denied.**

78.    By engaging in such unfair competition, Defendants have caused and continue to cause Plaintiffs actual, immediate, and irreparable harm for which Plaintiffs have no adequate remedy at law.

**ANSWER:    Denied.**

79.    Defendants will continue such wrongful conduct unless enjoined.

**ANSWER:    Denied.**

**WHEREFORE, Defendants request that Plaintiff's Amended Verified Complaint be dismissed, that judgment be entered in favor of Defendants and that Defendants be awarded its costs and interest, as well as its attorney's fees pursuant to 18 U.S.C. § 1836(b)(3).**

### COUNT VI
### ALLEGED UNJUST ENRICHMENT
### (AS TO ALL DEFENDANTS)

80.    Plaintiffs incorporate herein by reference the allegations of the preceding paragraphs.

**ANSWER:  Defendants, Steven Mark Hatcher, Kent Power, Inc., and Troy Kent incorporate by reference their answers to each of the preceding paragraphs.**

81.    Defendants have been unjustly enriched in that they have wrongfully and unjustly benefited from engaging in the unlawful acts herein described.

**ANSWER:  Denied.**

82.    Defendants knew and appreciated that they received such enrichment as a result of their unlawful scheme.

**ANSWER:  Denied.**

83.    Hatcher has accepted and retained salary, benefits, and other compensation from Plaintiffs during his employment, while simultaneously conspiring compete against UEC.

**ANSWER:  Denied.**

84.    Defendants have further accepted and retained the benefits of misappropriated confidential information and trade secrets.

**ANSWER:  Denied.**

85.    As a direct and proximate result of Defendants' misconduct, Plaintiffs have suffered damages, including the loss of employees, customers, goodwill, and business opportunities.

**ANSWER:  Denied.**

86.    It would be inequitable for Defendants to retain these benefits without restitution to UEC.

**ANSWER:  Denied.**

87.     Defendants' actions were intentional, willful, and malicious, and have caused immediate and irreparable harm to Plaintiffs, for which no adequate remedy at law exists.

**ANSWER:  Denied.**

**WHEREFORE, Defendants request that Plaintiff's Amended Verified Complaint be dismissed, that judgment be entered in favor of Defendants and that Defendants be awarded its costs and interest, as well as its attorney's fees pursuant to 18 U.S.C. § 1836(b)(3).**

**COUNT VII**
**ALLEGED BREACH OF CONTRACT**
**(AS TO HATCHER)**

88.     Plaintiffs incorporate herein by reference the allegations of the preceding paragraphs.

**ANSWER:  Defendant, Steven Mark Hatcher, incorporates by reference his answers to each of the preceding paragraphs.**

89.     Plaintiffs had an employment relationship with Hatcher.

**ANSWER:  Denied that Hatcher had an employment relationship with UEC. Admitted only that Hatcher was an employee of United Electric before August 15, 2025.**

90.     The employment relationship between Hatcher and Plaintiffs was governed by two contracts, the Employment Agreement and the SAR Agreement.

**ANSWER:  Denied that Hatcher was an employee of UEC, and further denied that either the Employment Agreement or the SAR Agreement governed Hatcher's employment with United Electric.  Further, the terms of the Agreements speak for themselves. Any remaining allegations are denied.**

91.    Hatcher and Plaintiffs entered into the Agreements for valuable consideration.

**ANSWER: The terms of the Agreements speak for themselves. Any allegation to the contrary is denied.**

92.    Hatcher has breached, among other things, the confidentiality, non-compete, and non-solicitation provisions of the Agreements.

**ANSWER:  Denied.**

93.    Hatcher's actions have caused substantial damage to Plaintiffs, including, but not limited to, Plaintiffs' continuing loss of an indeterminate amount of sales revenues, loss of goodwill, and loss of business opportunities.

**ANSWER:  Denied.**

**WHEREFORE, Defendants request that Plaintiff's Amended Verified Complaint be dismissed, that judgment be entered in favor of Defendants and that Defendants be awarded its costs and interest, as well as its attorney's fees pursuant to 18 U.S.C. § 1836(b)(3).**

## COUNT VIII
## ALLEGED BREACH OF DUTY OF LOYALTY
### (AS TO HATCHER)

94.    Plaintiffs incorporate herein by reference the allegations of the preceding paragraphs.

**ANSWER:  Defendant, Steven Mark Hatcher, incorporates by reference their answers to each of the preceding paragraphs.**

95.    As a corporate officer and senior executive, Hatcher owed UEC duties of loyalty, good faith, and fidelity.

**ANSWER:    This paragraph states a conclusion of law, for which no answer is required.  Hatcher affirmatively denies any obligation to UEC, as he was not employed by UEC.  Any remaining allegations are denied.**

96.    Hatcher breached those duties by secretly collaborating with a competitor, disclosing UEC's confidential pricing and bid information, and diverting opportunities and goodwill to Kent Power.

**ANSWER:  Denied.**

97.    As a result, UEC suffered significant harm to its business, relationships, and reputation.

**ANSWER:  Denied.**

**WHEREFORE, Defendants request that Plaintiff's Amended Verified Complaint be dismissed, that judgment be entered in favor of Defendants and that Defendants be awarded its costs and interest, as well as its attorney's fees pursuant to 18 U.S.C. § 1836(b)(3).**

## Affirmative Defenses

1.     Plaintiff's Amended Verified Complaint fails to state a claim on which relief can be granted.

2.     UEC lacks standing to bring some or all its claims.

3.     Hatcher was never an employee of UEC.  He was an employee of United Electric.  He owes no duty to UEC.

4.     Plaintiff's common law claims are pre-empted by the Kentucky Uniform Trade Secrets Act.

5.     Plaintiffs' implied and quasi-contract claims are precluded by the existence of a contract.

6.     UEC's claims are precluded by UEC's own breach of contract.

7.     UEC expressly waived Steven Mark Hatcher's restrictive covenants contained in the Agreements.

8.     UEC's claims are barred by the doctrine of unclean hands.

9.     The claims against Steven Mark Hatcher are subject to an arbitration provision.

10.     Defendants reserve the right to assert add additional affirmative defenses as they become known.

WHEREFORE, Defendants request that Plaintiff's Amended Verified Complaint be dismissed, that judgment be entered in favor of Defendants and that Defendants be awarded its costs and interest, as well as its attorney's fees pursuant to 18 U.S.C. § 1836(b)(3).

## Counterclaim

Defendant/Counter-Plaintiff, Steven Mark Hatcher ("Hatcher"), states his Counterclaim against Plaintiff/Counter-Defendant UEC Holdings, Inc. ("UEC") as follows:

1. Hatcher is a resident of Jefferson County, Kentucky.

2. Upon information and belief, UEC is a corporation existing under the laws of the Commonwealth of Kentucky with a principal place of business located at 9901 Linn Station Road, Suite 850, Louisville, Kentucky 40223.

3. This Court has supplemental jurisdiction over the Counterclaim under 28 U.S.C. § 1367(a).

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because UEC's failure to pay Hatcher wages owed to him occurred in this District and the resulting injury occurred there.

## Factual Allegations

5. Hatcher worked for United Electric Company, a subsidiary of UEC, for over 27 years.

6. In 2019, Hatcher was promoted to Vice President of the Utility Division of United Electric.

7. On January 10, 2019, Hatcher signed an Employment Agreement (**Exhibit A** to the Complaint) and a Stock Appreciation Right Agreement (**Exhibit B** to the Complaint).

8.     In July 2025, Hatcher was demoted from the role of Vice President of United Electric to the role of project manager due to the financial condition of the company.

9.     A week later, Hatcher was reinstated as Vice President.

10.    On August 15, 2025, Hatcher was terminated for a "safety violation." Hatcher was never told what the alleged safety violation was, nor was he presented with any evidence of a safety violation.

11.    Under the terms of the Employment Agreement, Hatcher could only be terminated without cause with thirty days prior written notice. (**Ex. A, § 3.3).**

12.    Hatcher was not provided thirty days prior written notice before his termination.

## **Count I – Breach of Contract**

13.    Hatcher restates and incorporates by reference his preceding allegations.

14.    The Employment Agreement is a valid, binding agreement.

15.    The Parties agreed that termination without cause requires thirty days prior written notice.

16.    Hatcher was terminated without just cause.

17.    Hatcher was not provided thirty days prior written notice.

18.    Hatcher fully complied with and otherwise performed all his duties under the Employment Agreement.

19.     UEC is obligated to pay Hatcher thirty days wages under the terms of the Employment Agreement if Hatcher is terminated without just cause.

20.     UEC's failure to comply with its contractual obligations constitutes a breach of the Parties' agreement.

21.     As a result of the breach, Hatcher is entitled to compensation for lost wages.

WHEREFORE, Defendant/Counter-Plaintiff, Steven Mark Hatcher, requests that the Court enter judgment in Hatcher's favor against Plaintiff/Counter-Defendant, UEC Holdings, Inc., in the amount to be determined at trial, which would include the compensation owed to Hatcher under the terms of the Employment Agreement, and all of Hatcher's attorneys' fees and costs incurred to collect that sum, as well as all other damages Hatcher has incurred, interest, and all other relief that the Court deems just and equitable.

MILLER JOHNSON
Attorneys for Defendants

Dated:  December 19, 2025        By ___/s/ D. Andrew Portinga_____
                                    D. Andrew Portinga (P55804)
                                        Admitted *Pro Hac Vice*
                                    James R. Peterson (P43102)
                                        Admitted *Pro Hac Vice*
                                    Amanda L. Rauh-Bieri (P83615)
                                      Admitted *Pro Hac Vice*
                                      Bryce C. Akins (P88780)
                                    *Pro Hac Vice* Admittance Pending
                    Business Address:
                                    45 Ottawa Avenue SW, Suite 1100
                                    Grand Rapids, Michigan 49503
                    Telephone: (616) 831-1700
                                    portingaa@millerjohnson.com
                                    petersonj@millerjohnson.com
                                    rauhbieria@millerjohnson.com
                                    akinsb@millerjohnson.com

MJ_ND 4911-0964-9024v9 6977-11