# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY

|  |  |
|---|---|
| **UEC HOLDINGS, INC.** and **UNITED ELECTRIC COMPANY, INC.** | : <br> : <br> : <br> : **CIVIL ACTION** |
| Plaintiffs, | : **NO. 3:25-CV-00731-DJH-CHL** <br> : |
| v. | : <br> : |
| **STEVEN MARK HATCHER,** **KENT POWER, INC.** and **TROY KENT** | : <br> : <br> : |
| Defendants. | : <br> : |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR A PARTIAL STAY OF ENFORCEMENT PENDING APPEAL

Plaintiffs UEC Holdings, Inc. and United Electric Company, Inc. (collectively, "Plaintiffs" or "UEC"), by counsel, submit this Memorandum in Opposition to Defendants' Second Motion for a Partial Stay of Enforcement Pending Appeal. Defendants' second motion presents an argument that has been repeatedly presented to Judge Lindsay, and repeatedly rejected. Boiled to its essence, Defendants are claiming that the preliminary injunction is overbroad because it calls for a court-approved forensic computer examiner to image their electronic devices and cloud-based accounts without including an ESI protocol to protect their attorney-client information. Defendants also claim that the preliminary injunction is unduly burdensome because they have over 600 employees and suggest that the preliminary injunction would require the imaging of over 500 devices. Defendants made these same representations and arguments to the Sixth Circuit in an emergency applications, which granted an administrative stay before Plaintiffs submitted a response. Defendants' lack of candor to this tribunal, and to the Sixth Circuit is shocking. Defendants have failed to advise the Court that just before filing their second motion to stay with

this Court, counsel for the parties and the court-approved forensic computer examiners convened a Teams video meeting. During the meeting, one of the Court-approved forensic computer examiners raised the issue of preventing the disclosure of Defendants' privileged information, and suggested that he would execute search terms to exclude any such privileged information from production. He also suggested a clawback in the event of an inadvertent disclosure. Notably, counsel for the parties – including counsel for Defendants – agreed that the forensic computer examiner's suggestion was reasonable. During the Team meeting, it was also agreed that the initial forensic imaging would be limited to three individual custodian accounts – a far cry from the 500 accounts claimed in Defedants' second motion. For these reasons, and as discussed more fully below, Defendants' second request for a stay is without merit and should be denied. Furthermore, Defendants' "renewed" request for the imposition of $5 million bond is without merit, and should be denied.

I.     **SUMMARY OF ARGUMENT**

Defendants ask this Court to stay enforcement of the preliminary injunction's core preservation and remediation provisions, Paragraphs 4(b)-(d), pending appeal. The requested information and the very mechanisms this Court ordered to preserve evidence, locate and return Plaintiffs' confidential information, and confirm its removal from Defendants' devices and accounts. Defendants have not met their burden for such extraordinary relief. This Court entered Paragraphs 4(b)-(d) after an evidentiary hearing and specific findings of misappropriation and concealment, and those provisions are narrowly directed to preventing continued misuse and ensuring meaningful compliance, not to giving Plaintiffs "unfettered access" to Defendants' systems.[1]

---

[1] Defendants' position ignores that this Court entered both a TRO and a Preliminary Injunction requiring preservation and forensic imaging. Yet Defendants neither withdrew their LG&E bid nor identified the devices

2

Defendants' bid for a stay rest largely on a procedural framing, that the injunction should be paused because it did not include a separate "forensic protocol" or standalone protective order. But this case is not in discovery, and the Court's preliminary injunction need not include the sorts of protocols that may be used in that disparate context. Defendants' framing of the issue does not match the actual record. In fact, Defendants have distorted reality by failing to advise the Court that just hours before Defendants filed their second stay motion, counsel for both sides participated in a Teams call with the Court-approved forensic examiners, Scott Bailey of N1 Discovery LLC and Brian Halpin of Capsicum Group, LLC, to address implementation. The parties discussed reasonable guardrails: limiting initial imaging to three custodians; using attorney-name filtering and segregation to protect potentially privileged materials; and employing standard clawback protections before any production. (Bailey Cert. at ¶¶ 5–7 attached herein as **Exhibit A**; Halpin Cert. at ¶ 6, attached herein as **Exhibit B**)[2]. The suggestion that Paragraphs 4(b)-(d) require immediate, uncontrolled production of privileged and confidential material is overstated.

Nor do Defendants show the sort of irreparable harm that warrants staying these provisions. The injunction does not authorize Plaintiffs to roam through Defendants' systems; it requires access for a Court-approved neutral examiner to identify and remediate UEC and United Electric generated material, with privilege protections addressed through standard, workable procedures. Any burdens Defendants describe, including their claimed holiday timing concerns, do not justify freezing preservation and remediation where this Court found serious misconduct and the risk of ongoing competitive harm. If anything, delaying forensic preservation and remediation increases

---

subject to imaging, and they ignored Plaintiffs' requests to proceed with compliance. This noncompliance occurred before the Sixth Circuit's administrative stay was entered. The administrative stay preserved the status quo; it did not excuse Defendants' prior failure to comply with this Court's orders.

[2] These certifications were previously submitted as exhibits to Plaintiffs' response to Defendants' emergency motion in the Sixth Circuit and are submitted here for the Court's convenience.

the risk that relevant information is altered, lost, or further disseminated, and it deprives Plaintiffs of the only meaningful way to verify compliance with Paragraph 4(a)'s "do not use" directive.

Because Defendants cannot demonstrate a likelihood of success on appeal, irreparable harm absent a stay, or that the balance of harms and the public interest favor pausing preservation and remediation, their motion should be denied.

## II.      RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

This action concerns Defendants' misuse of Plaintiffs' confidential pricing and rate information following the departure of Hatcher from United Electric Company. After expedited briefing and a full evidentiary hearing on December 1, 2025, at which this Court heard live testimony and received extensive documentary evidence, this Court entered a preliminary injunction addressing Plaintiffs' trade-secret claims. (D.N. 39). This Court found that Defendants used information they were not entitled to possess to pursue business with Plaintiffs' customers and that the resulting competitive injury to Plaintiffs was significant and irreparable.

The preliminary injunction reflects a measured exercise of this Court's equitable authority. Compared to the earlier temporary restraining order, this Court narrowed and tailored the relief to address the specific misconduct proven at the hearing. The injunction includes provisions designed not only to prohibit further misuse of Plaintiffs' confidential information, but also to preserve evidence, recover misappropriated materials, and confirm their removal from Defendants' systems through neutral, court-approved forensic processes. (D.N. 39 at ¶¶ 4(b)–(d)). These provisions were included to ensure that the injunction could be meaningfully enforced and that compliance could be verified.

Defendants filed a notice of appeal on December 9, 2025. (D.N. 41). Two days later, on December 11, 2025, Defendants moved in this Court for a partial stay of the injunction limited to

Paragraph 4(e). (D.N. 48). On December 16, 2025, this Court denied Defendants' motion for a forensic protocol and protective order (D.N. 55).

The following day, December 17, 2025, counsel for both parties participated in a Teams call with the two independent forensic examiners approved by this Court, Scott A. Bailey of N1 Discovery LLC and Brian J. Halpin of Capsicum Group, LLC, to discuss implementation of the injunction's preservation and remediation provisions. During that call, the examiners outlined standard safeguards to protect attorney-client privilege, including attorney-name filtering, segregation of potentially privileged materials, and the use of customary clawback procedures. The parties also agreed that any initial forensic imaging would be narrowly limited to three custodians. (Bailey Cert. ¶¶ 6–8; Halpin Cert. ¶ 6). These discussions addressed the very privilege and scope concerns later raised by Defendants as grounds for emergency relief.

Later that same day, Defendants filed a second motion seeking to stay enforcement of Paragraphs 4(b)–(d) of the injunction. (D.N. 58). In that filing, Defendants requested expedited consideration and advised that they would seek emergency relief from the Sixth Circuit if a ruling was not issued promptly. The motion did not disclose that Defendants had already conferred with the Court-approved forensic examiners or that agreed safeguards were in place to govern implementation of the injunction.

On December 18, 2025, Defendants filed an emergency application in the Sixth Circuit. (Emergency Motion for Partial Stay, attached herein as **Exhibit C**). Less than 24 hours later, before Plaintiffs' responded to the emergency application, and without having the opportunity to review the transcript of the preliminary injunction hearing, the Sixth Circuit entered an administrative stay, expressly noting that the stay was entered to preserve the status quo while this Court is given the opportunity to rule on Defendants' pending stay motions. (6th Circuit Order, attached herein

5

as Exhibit D). On December 29, 2025, Plaintiffs-Appellees filed an emergency application with the Sixth Circuit, requesting that the administrative stay be lifted. (Emergency Motion to Lift Stay, attached herein as Exhibit E).

As a result, enforcement of the injunction's preservation and remediation provisions has been paused notwithstanding this Court's factual findings regarding Defendants' admitted misuse of Plaintiffs' confidential information and the attendant risk of ongoing competitive harm. The procedural posture thus frames the narrow question now before this Court: whether a stay of Paragraphs 4(b)-(d) pending appeal is warranted in light of the evidentiary record, this Court's findings, and the equitable purposes those provisions were designed to serve.

### 1. A Third Bite At The Same Apple

Defendants' present request is not a new issue raised for the first time on appeal. Rather, it represents a third attempt to relitigate the same privilege, scope, and forensic-process objections that have already been presented to, and rejected by, this Court. Defendants previously sought to narrow or delay the Court-ordered forensic preservation and remediation through motions for a forensic protocol and a protective order, arguing that the injunction posed undue risk to privileged and confidential information. This Court considered those arguments and expressly rejected them, finding that Defendants' proposed procedures would "serve only to frustrate" this Court's Preliminary Injunction and would introduce delays incompatible with its purpose. (D.N. 55).

Undeterred, Defendants now repackage those same arguments under the label of a "stay pending appeal," again asserting speculative concerns about privilege and scope while ignoring both this Court's prior rulings and the agreed-upon safeguards discussed with the Court-approved forensic examiners. A stay pending appeal is not a vehicle for serial reconsideration of issues already decided, nor does it permit Defendants to obtain indirectly what they could not obtain

directly through repeated motion practice. Because Defendants' current request merely revisits arguments this Court has already rejected, it provides no basis for extraordinary relief.

### III.   LEGAL STANDARD GOVERNING A STAY PENDING APPEAL

A stay pending appeal is "an intrusion into the ordinary processes of administration and judicial review" and is considered an extraordinary remedy. *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 220 (6th Cir. 2016); *see also Goins v. Saint Elizabeth Medical Center*, 2022 WL 22628786 at *3 (E.D. Ky. Nov. 29, 2022). A party seeking such relief must satisfy a four-factor test requiring this Court to consider: (1) the movant's likelihood of success on the merits of the appeal; (2) whether the movant will suffer irreparable injury absent a stay; (3) whether issuance of a stay would substantially injure other parties; and (4) where the public interest lies. *Kentucky v. Biden*, 23 F.4th 585, 593 (6th Cir. 2022); *see also Zagorski v. Haslam*, 741 Fed. Appx. 320 (6th Cir. 2018). These four factors are not prerequisites, but rather "interrelated considerations that must be balanced." *Horton v. General Electric Company*, 2025 WL 3215907, at *2 (W.D. Ky. Nov. 18, 2025). However, likelihood of success on the merits and irreparable harm are the most critical. *Id.* (*citing Nken v. Holder*, 556 U.S. 418, 434 (2009)).

### IV.   ARGUMENT

#### 1.   This Court Should Deny Defendants' Request To Stay Paragraphs 4(b)-(d) Of The Preliminary Injunction

Defendants' request to stay Paragraphs 4(b)-(d) of the Preliminary Injunction fails at every step of the governing analysis. Those provisions are the injunction's core remedial and preservation measures. Paragraph 4(b) requires Defendants to preserve all electronic and physical materials containing UEC or United Electric information; prohibits deletion, alteration, or destruction; and mandates access for a Court-approved independent forensic examiner to image,

7

preserve, and search relevant data sources and retain mirror images pending further order (D.N. 39 at PageID # 579). Paragraph 4(c) requires Defendants to return all UEC and United Electric files, materials, equipment, and confidential information and to cease any use, copying, or disclosure. *Id*. Paragraph 4(d) requires Defendants, within ten days of this Court's approval of a qualified independent examiner, to provide a written certification confirming that all UEC and United Electric confidential information has been permanently removed from all devices, accounts, and storage media in Defendants' custody, possession, or control. *Id*. Put simply, Defendants seek to stay the only portions of the injunction that ensure the trade secrets are identified, secured, and removed.

### A. Under the Court's Findings, Defendants Cannot Show Any Likelihood of Success on Appeal

Defendants' "likelihood of success" is based on two main complaints: (1) the injunction didn't spell out a detailed forensic protocol, and (2) the Court entered the injunction before a protective order was in place. But even if Defendants disagree with how this Court structured the process, that does not show the injunction was legally wrong, much less that Defendants are likely to win on appeal. Defendants are essentially asking the appellate court to replace the District Court's judgment with Defendants' preferred procedure. That is not enough to justify a stay pending appeal, and it certainly is not a reason to pause the key provisions that preserve evidence and stop continued misuse of UEC's confidential information.

#### a. The District Court Did Not Err In Entering Paragraphs 4(b)–(d) Without A Separate "Forensic Protocol"

Defendants' claim that this Court authorized a lawless forensic examination without a protocol is contradicted by a Teams call held with all parties, including the forensic examiners. On

8

December 17, 2025, after entry of the Preliminary Injunction but before any forensic collection occurred, counsel for both parties participated in a Teams call with the Court-approved forensic examiners to discuss implementation of Paragraphs 4(b)-(d). During that call, the parties addressed the very issues Defendants now claim were ignored: custodian scope, search methodology, attorney-client privilege, and the handling of sensitive information. (Bailey Cert. at ¶¶ 6–8; Halpin Cert. at ¶ 6).

Specifically, the parties discussed limiting the examination to agreed custodians and data sources; implementing attorney-name filtering and privilege review before any production; and using standard clawback protections to ensure that no privileged material would be disclosed. *Id*. Plaintiffs expressly agreed that potentially privileged documents would be segregated and reviewed before any production to Defendants. *Id*. N1 Discovery, one of the approved forensic vendors, has previously been retained by Defendants themselves. (Bailey Cert. at ¶ 9), and the other, Capsicum, is a former FBI Special Agent with extensive experience handling sensitive and privileged materials. (Halpin Cert. at ¶ 3). Defendants' motion omits these material facts, creating a misleading impression about both the scope of the forensic process and the protections in place, and reflecting a lack of candor regarding the procedural record.

That lack of candor is further illustrated by Defendants' repeated assertion that the injunction implicates "over 500 devices" and hundreds of employees. During the December 17th conference with the Court-approved forensic examiners, the parties expressly agreed that any initial forensic imaging would be narrowly limited to three custodians, with scope and methodology addressed incrementally and subject to privilege safeguards. Defendants' motion makes no mention of this agreed limitation and instead suggests a sweeping, company-wide

9

intrusion that was never ordered and never contemplated. This selective framing distorts the actual record and improperly inflates the purported burden to manufacture urgency where none exists.

Against that backdrop, Defendants' insistence that the injunction lacked a "forensic protocol" is not only unsupported, it is factually inaccurate. Courts routinely recognize that forensic procedures are often worked out cooperatively. "In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention." *Hill v. Motel 6*, 205 F.R.D. 490, 492 (S.D. Ohio 2001). That is precisely what occurred here.

District courts have broad discretion to fashion equitable relief to prevent ongoing misuse of trade secrets and preserve evidence. *Edelen v. General Electric Company*, 2008 WL 11637872 (W.D. Ky. Oct. 1, 2008). The Preliminary Injunction here did exactly that, while leaving room for reasonable implementation through cooperation and court oversight.

### b. The District Court Did Not Err In Entering Paragraphs 4(b)–(d) Without A Separate Protective Order

Defendants' claim that this Court erred by entering Paragraphs 4(b)–(d) without a standalone protective order mischaracterizes both the injunction and the record. Paragraphs 4(b)–(d) are remedial provisions designed to preserve evidence, recover misappropriated trade secrets, and prevent continued misuse. Nor do these provisions permit unfettered access to Defendants' information. This Court also expressly rejected Defendants' proposed protocol and protective order, finding that they would "serve only to frustrate the Court's Preliminary Injunction" by introducing delays incompatible with its time-sensitive purpose. (D.N. 55 at PageID #735.)

Defendants' emphasis on "over 600 employees" and "over 500 devices" is misleading. The forensic examination is not a company-wide sweep. It is limited to agreed custodians and relevant data sources. During the December 17, 2025 meeting with the Court-approved forensic examiners,

10

the parties discussed narrowing scope, implementing attorney-name filtering, segregating potentially privileged material, and applying clawback protections before any production. Defendants omit these facts.

To justify a protective order, Defendants must show a "clearly defined and serious injury," not conjecture. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). Where Defendants have admitted misappropriation and selective deletion of evidence, the greater risk is delay, not disclosure. This Court acted well within its discretion in declining to impose additional procedural hurdles that would undermine preservation and enforcement.

### B. Defendants Cannot Demonstrate Irreparable Harm Where Their Alleged Injury Is Speculative and Self-Inflicted

Defendants' assertion of irreparable harm is speculative and legally insufficient. Compliance with a lawful court order, particularly one enforced through neutral, Court-approved forensic examiners, does not constitute irreparable injury. Defendants' argument rests on the false premise that Plaintiffs will receive "full access" to privileged and confidential information. They will not. This Court expressly required the use of neutral forensic examiners and both parties discussed privilege filtering and clawback protections. Speculative concerns about hypothetical disclosure do not amount to irreparable harm. "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *CBA Pharma, Inc. v. Harvey*, 2022 WL 983143, at *6 (E.D. Ky. Mar. 30, 2022) (*citing Charlesbank Equity Fund II v. Blinds To Go, Inc*., 370 F.3d 151, 162 (1st Cir. 2004)), *aff'd sub nom. CBA Pharma, Inc. v. Perry*, 22-5358, 2023 WL 129240 (6th Cir. Jan. 9, 2023).

Defendants' real complaint is timing, not harm. But delay caused by Defendants' own conduct does not create irreparable injury. Where a defendant has admitted misappropriation and

11

selective deletion of evidence, courts are especially reluctant to accept claims that compliance is "impossible" or unfair. Any burden Defendants face arises from the need to remediate proven misconduct, not from the injunction itself. By contrast, further delay would exacerbate Plaintiffs' irreparable harm by allowing misappropriated trade secrets to remain unidentified, unreturned, and potentially exploited. The balance of irreparable harm therefore weighs decisively against a stay.

### C. A Stay Would Inflict Irreparable Harm by Allowing Misappropriated Trade Secrets to Remain Embedded and Unverified

Defendants' claim that Plaintiffs will not be harmed by a stay is directly refuted by both the evidentiary record and this Court's express findings. Hatcher admitted under oath that he disclosed UEC's exact pricing, markups, and blended rates to Kent Power while still employed, and that he selectively deleted evidence of that misconduct. (D.N. 35, Tr. at 33:1–25; 34:1–25; 35:1–25; 36:1–25; 37:1–25; 38:1–17).[3] Defendant Kent admitted that he used Hatcher to review pricing before submission to LG&E and that the conduct was wrong (D.N. 35, Tr. at 132:14–25; 133:1–2). UEC's COO further testified that disclosure of the blended rate reveals UEC's entire pricing "playbook," eliminating any ability to compete fairly. (D.N. 35, Tr. at 121:9–16). This Court carefully reviewed that testimony and expressly found that UEC faces irreparable harm from the loss of secrecy, loss of competitive advantage, and risk to its core customer relationship; harms that cannot be remedied by money damages. (D.N. 39 at PageID #575–576). Courts consistently recognize that such loss of secrecy and competitive position constitutes irreparable harm. *See*

---

[3] Plaintiffs have filed a motion for leave to redact the transcript of the preliminary injunction hearing, which remains pending before the District Court. In response to the Sixth Circuit's order granting an administrative stay, Plaintiffs attached a fully redacted version of the transcript to their filing in the Sixth Circuit to protect confidential information and trade secrets while ensuring the appellate court had access to the evidentiary record.

*Ecolab, Inc. v. Shanklin*, No. 3:23-CV-215-CHB, 2023 WL 4360286, at *15 (*citing RGIS, LLC v. Gerdes*, 817 F. App'x 158, 163 (6th Cir. 2020)).

Defendants' reliance on Paragraph 4(a) is also misplaced. A bare prohibition on "use or dissemination" does not protect Plaintiffs where misappropriation has already occurred and the scope of retained data remains unknown. Without forensic preservation, return, and certification of removal under Paragraphs 4(b)–(d), Plaintiffs have no way to verify compliance or prevent continued exploitation of information Defendants admittedly possessed and used. That risk is not theoretical: Hatcher testified that Kent Power views LG&E not only as a transmission opportunity, but also as a source of distribution and gas work, the core of United Electric's business. (D.N. 35, Tr. at 50: 17-21). A stay would directly undermine the District Court's express finding of irreparable harm by allowing Defendants to retain, embed, and exploit misappropriated trade secrets throughout the pendency of the appeal.

### D. The Public Interest Strongly Favors Immediate Preservation, Remediation, and Enforcement, Not Delay

Courts recognize that the public has a strong interest in deterring trade secret theft, enforcing contractual and statutory protections, and preventing unfair competition, particularly where misappropriation is admitted. *Dealer Trade Network Holdco, LLC v. Lynch*, 2023 WL 8418163, at *2 (W.D. Ky. Aug. 9, 2023). The District Court expressly found that harm resulting from Defendants' inability to continue competing while using misappropriated trade secrets would be "self-inflicted," and that the public interest is served by condemning surreptitious acquisition of confidential information and theft of customers through unfair competition. (D.N. 39, PageID #577).

13

Defendants' generalized privacy concerns do not outweigh those interests, particularly where the District Court required neutral, court-approved forensic examiners and rejected delay-inducing procedures. The public has no interest in permitting defendants who admit misuse of trade secrets to postpone compliance through procedural maneuvering. The public interest therefore weighs decisively against a stay.

## V. DEFENDANTS' RENEWED REQUEST FOR A SECURITY BOND SHOULD BE DENIED

Defendants' alternative request for a $5 million security bond fares no better than their request for a stay. Rule 65(c) does not mandate the imposition of a bond in any particular amount, nor does it require a bond at all where the circumstances do not justify it. Rather, the amount of security, if any, lies squarely within this Court's discretion. *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995).

Here, this Court entered the preservation and remediation provisions after an evidentiary hearing and express findings of misappropriation and selective deletion of evidence. Those findings weigh heavily against imposing a bond designed to shield Defendants from the ordinary consequences of equitable relief. Where the injunction is supported by the record and narrowly tailored to prevent ongoing misuse and preserve evidence, a substantial bond is unnecessary.

Critically, Defendants do not identify any concrete, quantifiable damages that would result from compliance with Paragraphs 4(b)-(d). They do not explain how a $5 million figure was calculated, what losses it is meant to cover, or how it bears any relationship to the actual scope of the injunction. This Court entered Paragraphs 4(b)-(d) after finding credible evidence of misappropriation and selective deletion of evidence. The remedial provisions are designed to

preserve evidence and prevent continued misuse. Any burden Defendants face arises from the need to remediate proven misconduct under Court supervision, not from overreaching injunctive relief.

Finally, imposing a substantial bond in these circumstances would improperly shift the risk of Defendants' conduct onto Plaintiffs, notwithstanding this Court's factual findings. Rule 65(c) is not intended to insulate defendants from the consequences of equitable relief entered to address wrongful conduct, nor to function as a penalty imposed on a prevailing movant at the preliminary-injunction stage.

Because Defendants have failed to demonstrate any non-speculative risk of compensable harm, their renewed request for a $5 million security bond should be denied

## VI. CONCLUSION

Defendants have not satisfied any of the factors required for the extraordinary remedy of a stay pending appeal. Paragraphs 4(b)-(d) are narrowly tailored, core preservation and remediation provisions entered after an evidentiary hearing and specific findings of trade-secret misappropriation and concealment. Defendants' asserted harms are speculative, and their procedural complaints disregard the agreed, workable safeguards confirmed with the Court-approved neutral forensic examiners on December 17, 2025. By contrast, a stay would substantially prejudice Plaintiffs by delaying preservation, preventing recovery and removal of misappropriated materials, and increasing the risk of continued use, dissemination, or loss of evidence, harms that cannot be remedied after the fact. The public interest likewise favors enforcement of trade-secret protections and meaningful compliance with this Court's injunction.

Accordingly, Plaintiffs respectfully request that the Court deny Defendants' Second Motion for a Partial Stay of Enforcement Pending Appeal in its entirety and deny Defendants' renewed request for a $5,000,000 security bond.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **COHEN SEGLIAS PALLAS GREENHALL & FURMAN, P.C.** |
| Dated: December 31, 2025 | */s/ Lori W. Azzara* <br> **LORI W. AZZARA, ESQUIRE** <br> Attorney Id. No. 91865 <br> **JONATHAN LANDESMAN, ESQUIRE*** <br> **LEIGH NAZZARIO, ESQUIRE*** <br> 626 Washington Place, Suite 1902 <br> Pittsburgh, PA 15219 <br> Phone: (412) 434-5530 <br> E-Mail: lazzara@cohenseglias.com <br> jlandesman@cohenseglias.com <br> lnazzario@cohenseglias.com |

*Counsel for Plaintiffs, UEC Holdings, Inc. and United Electric Company, Inc.*

\* Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I, Lori W. Azzara, Esquire, hereby certify that on this 31st day of December, 2025, a true and correct copy of the foregoing *Plaintiffs' Memorandum in Opposition to Defendants' Second Motion for a Partial Stay of Enforcement Pending Appeal* has been filed electronically and is available for viewing and downloading from the ECF system and was served via ECF upon the following:

James R. Peterson, Esquire
D. Andrew Portinga, Esquire
Amanda L. Rauh-Bieri, Esquire
Miller Johnson
45 Ottawa Avenue, SW, Suite 1100
Grand Rapids, MI 49503
petersonj@millerjohnson.com
portingaa@millerjohnson.com
rauhbieria@millerjohnson.com

Kent Wicker, Esquire
Kayla M. Campbell, Esquire
Wicker Brammell, PLLC
323 West Main Street, 11th Floor, Suite 2100
Louisville, KY 40202
kent@wickerbrammell.com
kayla@wickerbrammell.com

*Counsel for Defendants*

/s/ Lori W. Azzara
**LORI W. AZZARA, ESQUIRE**