**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00731-DJH-CHL**

**UEC HOLDINGS, INC., et al.,** **Plaintiffs,**

**v.**

**STEVEN MARK HATCHER, et al.,** **Defendants.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Transcript to be Redacted filed by Plaintiff UEC Holdings, Inc. ("UEC"). (DN 56.) Defendants Steven Mark Hatcher ("Hatcher"), Kent Power, Inc. ("Kent Power"), and Troy Kent ("Kent") (collectively "Defendants"), have not filed a Response, and the time for doing so has passed. Therefore, the Motion is ripe for review.

## I. Background

UEC is the parent and sole owner of United Electric Company, Inc. ("United Electric"), a Kentucky contractor that provides commercial and industrial electrical construction and utility services in and around Louisville. (DN 1, at ¶ 24.) Hatcher was Vice President of the Utility Division for United Electric until he was fired in 2025. (*Id.* at ¶¶ 24, 28.) UEC alleges that Hatcher secretly leaked company secrets to Kent Power while he was employed at UEC. (*Id.* at ¶ 36.) Plaintiffs moved for a preliminary injunction to enjoin Hatcher from engaging in any competing contracting or utility service business within one hundred miles of any UEC office and to enjoin Defendants from accepting business from customers with whom Hatcher had contact, to use or share any confidential information belonging to UEC, to return any confidential information and materials belonging to UEC, and to preserve all materials containing UEC information. (DN 5-3, at PageID # 169.) The Court conducted a hearing on the Motion and granted it in part. (DN 39.)

UEC is now asking the Court to redact certain portions of the Transcript of Preliminary Injunction Hearing Before Chief Judge David J. Hale ("Transcript"). (DN 35.)

## II. Discussion

The issue before the Court is whether it should redact portions of the Transcript that UEC argues contain information that, if publicized, would harm its competitive standing in the marketplace and unreasonably intrude upon third-party privacy interests. In particular, this information includes "nonpublic rates, dollar figures, percentages, workforce requirements, and other internal operational information" as well as the identities of third parties not involved in this litigation. (DN 56-2, at PageID # 756-57.) UEC argues that the public interest in this information is minimal, and as such, redacting this information would protect these interests while preserving the public's right of access to the judicial record. (*Id.* at PageID # 755.)

### A. Standard

In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), the Supreme Court held that "[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Id.* at 598. Accordingly, the Sixth Circuit Court of Appeals reviews a district court's order to seal its records for abuse of discretion. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 306 (6th Cir. 2016). But the Sixth Circuit does not accord the district court the traditional scope of narrow review reserved for discretionary decisions based on first-hand observations due to the important right of public access to court records. *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983). Therefore, only the most compelling reasons can justify non-disclosure of judicial records. *Id.*

It is well established that a "strong presumption" exists in favor of keeping court records open to the public. *See, e.g., Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1176-79 (6th Cir. 1983). The party seeking to seal the records bears the heavy burden of overcoming the presumption, and "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Shane Grp.*, 825 F.3d at 305 (quoting *In re Knoxville*, 723 F.2d at 476). To meet this burden, the party seeking a seal must show: (1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's right of access; and (3) that the proposed seal is narrowly tailored. *Id.* The Sixth Circuit has held that "[t]he proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Shane Grp.*, 825 F.3d at 305–06 (quoting *Baxter Int'l, Inc. v. Abbott Lab'ys.*, 297 F.3d 544, 548 (7th Cir. 2002)). Further, in ruling on a motion to seal, the court is required to make "specific findings and conclusions 'which justify nondisclosure to the public.'" *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 594 (6th Cir. 2016) (quoting *Brown & Williamson*, 710 F.2d at 1176).

**B. Portions of the Transcript Not Relied Upon by the Court.**

The Court cited the Transcript several times throughout its Order. (DN 39, at PageID # 572, 575-76.) But only once did the Court directly cite to information that UEC is asking the Court to redact. (*Id.* at PageID # 576.) Because the analysis depends on whether the Court directly relied on the information, the Court will examine that particular information separately. The Court will begin by determining the propriety of redacting information the Court did not cite to in its Order.

**1. Public Interest**

At minimum, "[t]he public has a strong interest in obtaining the information contained in the court record." *Shane*, 825 F.3d at 305 (quoting *Brown*, 710 F.2d at 1180). Beyond that, the

particular circumstances of a case may strengthen that interest; "the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Id.* at 305. "The inverse is true, too. The lesser the public interest in the litigation's subject matter, the lesser the showing necessary to overcome the presumption of access." *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82-CRS-CHL, 2017 WL 3220470, at *5 (W.D. Ky. July 28, 2017).

Here, there are three factors that lessen the public interest in accessing this information. First, the Transcript was relied upon in ruling on Plaintiffs' Motion for a Preliminary Injunction. (DN 5.) Although motions for a preliminary injunction require the Court to consider the movant's likelihood of success on the merits, a preliminary injunction is "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). A movant is not required to prove his or her case in full and the findings of fact and conclusions of law made by the Court are not binding at trial on the merits. *Id.* (citing *Camenisch*, 451 U.S. at 395). As such, the public interest in viewing evidence relevant to an order for a preliminary injunction is lower than any final ruling on the merits. *See Rudd Equip. Co., Inc. v. Volvo Constr. Equip. N. Am., LLC*, No. 3:19-CV-778-DJH-CHL, 2020 WL 6946577, at *3 (W.D. Ky. Nov. 25, 2020) (public interest in access was "especially strong" for a document "offered in support of a motion for summary judgment, which will result in a ruling on the merits as a matter of law").

The second factor weighing in favor of sealing is the nature of the case. This is a case that involves claims for misappropriation of trade secrets, tortious interference with contractual relations, tortious interference with prospective business advantage, unfair competition, unjust

enrichment, breach of contract, and breach of the duty of loyalty. (DN 1, at PageID # 9-15.) This is unlikely to be a case where the outcome determines whether a right exists, or whether a statute is constitutional. *See Shane Grp.*, 825 F.3d at 305. Nor is this a case involving issues crucial to the public, where the public's interest would be focused not only on the result, but on the conduct giving rise to the case. *Id.* (identifying antitrust cases as the type of case where "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption") (quoting *Brown & Williamson*, 710 F.2d at 1180); *Brown & Williamson*, 710 F.2d at 1180 ("The subject of this litigation potentially involves the health of citizens who have an interest in knowing the accurate 'tar' and nicotine content of the various brands of cigarettes on the market."); *United States ex rel. Scott v. Humana Inc.*, No. 3:18-CV-00061-GNS-CHL, 2021 WL 4449277, at *5 (W.D. Ky. Sept. 28, 2021) ("Here, the subject matter of this litigation heightens the presumption of access. At its core, the case is about the cost of prescription drugs, a leading national concern among Americans."). This is also not a class action case, where by definition some members of the public are also parties to the case. *See Shane Grp.*, 825 F.3d at 305.

The third and final factor that weighs in favor of sealing involves the particular information to be sealed. If the public has an interest in viewing the documents that the Court relied upon in reaching its decisions, then it stands to reason that information the Court does not rely upon likely does not carry the same public interest. *See Johnson v. Evolent Health LLC*, No. 3:20-CV-00601-DJH-CHL, 2022 WL 71635, at *2 (W.D. Ky. Jan. 6, 2022) (holding that the public interest was mitigated because the underlying brief did not quote or reference any of the information the defendant sought to redact). Here, this category of information was not cited by the Court in its Order. *See generally* (DN 39.) Therefore, the public interest in this information is low.

### 2. Privacy Interest

In general, only trade secrets, information covered by a recognized privilege, and information required by statute to be maintained in confidence are enough to overcome the presumption of access. *Shane Grp.*, 825 F.3d at 308. However, these are not rigid categories. It is neither necessary nor sufficient for information to fit into one of these three categories to implicate a recognizable privacy interest. *See Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 638 (6th Cir. 2019) ("While the existence of a trade secret will generally satisfy a party's burden of showing a compelling reason for sealing documents, even if a trade secret does not exist, a court may still find a compelling reason exists; further, even if a district court finds that a trade secret exists, it must still determine whether public interest outweighs the moving party's interests in protecting their trade secret."). UEC outlines two categories of information it seeks to seal: confidential business information and third-party privacy interests. (DN 56-2, at PageID # 756.)

#### a) Confidential Business Information

UEC asserts that the testimony discloses "nonpublic rates, dollar figures, percentages, workforce requirements, and other internal operational information." (DN 56-2, at PageID # 756.) UEC states that disclosure "would provide competitors with insight into Plaintiffs' pricing structure and operational capacity, creating an unfair competitive advantage." (*Id.*) The Court has reviewed the Transcript and finds that much of the information referenced reveals details as to both UEC's and Kent Power's pricing. The Court agrees that the pricing structures implicate a sufficient privacy interest. If these rates were made public, rivals could easily learn the terms of the Parties' deals and swoop in to poach clients from underneath them. *See Kentucky v. Marathon Petrol. Co. LP*, No. 3:15-CV-354-DJH, 2018 WL 3130945, at *6 (W.D. Ky. June 26, 2018). This is especially problematic given the fact that UEC is seeking recovery for this exact type of injury.

*See* (DN 5-1, at PageID # 70.) UEC also seeks to redact information concerning crew sizes. (DN 35, at PageID # 436.) Much like pricing structures, this is also information that, if publicized, would harm UEC's competitive standing because it bears on crew rates. *See* (DN 39, at PageID # 570.) Furthermore, the Court held that UEC would likely be able to show that the information is a trade secret when granting the Preliminary Injunction. (*Id.*) To unseal this information would be to invite the very harm that the Court's Preliminary Injunction is meant to prevent. Therefore, the Court finds that information related to pricing, bid structures, and crew sizes all carry a sufficient privacy interest to justify sealing.

**b) Third Parties**

UEC also asserts that the Transcript identifies contractors and employees who are not parties to this litigation, and as such, there is a compelling interest in keeping their names redacted. (DN 56-2, at PageID # 756-57.) The Court gives a lot of weight to the privacy interests of third parties. *Shane Grp.*, 825 F.3d at 308. Such parties are typically not responsible for the initiation of the underlying litigation, and as such, have a justifiable expectation of privacy that their personal and business information will not be revealed to the public. *See In re Knoxville*, 723 F.2d at 477. Indeed, third parties are usually not present to advocate for their interests, and consequently, often rely on the litigants to do so for them. But named parties do not get a blank check to seal whatever they please simply by invoking the interests of third parties; such interests must be sufficient to justify sealing. *See Shane Grp.*, 825 F.3d at 308. Here, UEC fails to give the Court enough information to ascertain the privacy interests of these third parties. UEC states in a conclusory fashion that disclosure would "serve no public interest" and "risk[] unnecessary reputational or commercial harm." (DN 56-2, at PageID # 756-57.) But the Court has reviewed the Transcript and does not find any reason to conclude that publicizing the names of the third-party contractors,

employees, and customers involved in this matter would work any specific or definite harm. Seeing no privacy interest sufficient to justify sealing, when compared to the baseline presumption of access, the Court finds that sealing these names would be improper. As such, the Court will order these names to be unredacted.

### C. Portions of the Transcript Relied Upon by the Court.

Unlike other portions of the Transcript that UEC seeks to redact, there is one statistic mentioned in the transcript that the Court explicitly cited to in its Order. The Court noted that "over ninety-five percent of United Electric's business is with LG&E," a fact it cited from the Transcript. (DN 39, at PageID # 576.) UEC asks that the Court redact the number, "95." UEC does not explain at all how anyone would suffer any harm if this statistic were publicized, nor does the Court see how it could. Therefore, the Court does not find any privacy interest sufficient to redact this information.

Compared to the lack of any identifiable privacy interest, the baseline presumption of access counsels against sealing. Furthermore, the Court relied on this fact in its analysis as to whether it should issue a preliminary injunction. (DN 39, at PageID # 576.) To grant a preliminary injunction, courts must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (quoting *Tenke Corp.*, 511 F.3d at 542). Regarding the second factor, a plaintiff's injury is irreparable if it is not fully compensable by monetary damages. *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)).

Here, the Court found that this factor weighed in favor of granting a preliminary injunction because a significant portion of UEC's business is with LG&E. (DN 39, at PageID # 576.) Thus, a preliminary injunction was necessary to prevent "a potentially significant competitive injury to UEC." (*Id.*) Therefore, the Court relied on the percentage of UEC's business that is with LG&E. This means that this fact was relied upon by the Court in adjudicating the rights and duties of the Parties before it. Accordingly, this fact carries a significant public interest, and the Court will order that it be unredacted.

## III. Order

For the foregoing reasons,

IT IS HEREBY ORDERED as follows:

(1) Plaintiffs' Motion for Transcript to be Redacted (DN 56) is **GRANTED IN PART and DENIED IN PART**. The Court approves UEC's proposed redactions to the Transcript of the Preliminary Injunction Hearing before Chief Judge David J. Hale (DN 35) except as to the redactions for non-party names mentioned in the Transcript and the percentage "95%" anywhere it appears in the Transcript.

(2) The Clerk is directed to keep the unredacted transcript (DN 35) **PERMANENTLY UNDER SEAL**.

(3) On or before **September 30, 2026**, Plaintiffs shall email a revised statement of redactions listing the redactions approved in this Order by page and line number to the Court Reporter Dena Legg, via email to dena_legg@kywd.uscourts.gov. Thereafter, the Court Reporter will prepare and file the redacted transcript.

cc: Counsel of record

September 15, 2026

Colin H Lindsay, Magistrate Judge

United States District Court